UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| JAMES MCINTOSH | ) | CIV. ACTION NO.05 CV9973 |
| | ) | (CM) |
| Plaintiff | ) | DEMAND FOR JURY TRIAL |
| | ) | |
| vs. | ) | |
| | ) | |
| COVENANT HOUSE, BRUCE HENRY, | ) | |
| DR. ROBERT GIUGLIANO | ) | |
| | ) | |
| Defendants | ) | |

RECEIVED
JUL 18 2007
U.S.D.C. S.D. N.Y.
CASHIERS

## AMENDED COMPLAINT

### I. PRELIMINARY STATEMENT

1. The Plaintiff, Dr. James McIntosh, is a U.S.-born male of African descent, residing in Queens, New York. He was employed by Covenant House as a psychiatrist from March, 1999 until his discharge in November, 2003. Plaintiff is bringing this action because defendants, acting individually and in their official capacities have discriminated against him by harassing him on the basis of his race, color and gender. Defendants have retaliated against Dr. McIntosh by terminating his employment as a psychiatrist under the pretext of a discipline matter. Defendants have subjected Dr. McIntosh to terms and conditions of employment different than those applied to white and female employees, by subjecting him to harassment, stripping him of parking privileges attendant with his position, and by terminating his employment without adequate grounds.

2. By engaging in acts of intentional race and gender discrimination, retaliation and unlawful harassment in the workplace and by using their supervisory power, discretion and authority to retaliate against Dr. McIntosh to harass and terminate his employment without just

cause the defendants have violated his rights under the Civil Rights Act of 1991, 42 U.S.C. sec. 1981, 42 U.S.C. sec. 1983, 42 U.S.C. sec. 2000(e) and the laws of the State of New York.

3. The Plaintiff seeks declaratory and injunctive relief and damages for defendants' unlawful actions.

## II. JURISDICTION

4. Plaintiff brings this action pursuant to 42 U.S.C. sec. 1981, 42 U.S.C. sec. 1983, 42 U.S.C. sec. 2000(e). This Court has jurisdiction over the claims presented in this action pursuant to 28 U.S.C. sec. 1331 and 1343(a)(3) and (4).

5. Plaintiff's claim for declaratory relief is authorized by 28 U.S.C. sec. 2201 and 2202. The Court has supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. sec. 1367.

## III. PARTIES

6. The Plaintiff, Dr. James McIntosh, is a U.S.-born male of African descent, residing in Queens, New York. He was employed by Covenant House as a psychiatrist from March, 1999 until his discharge in November, 2003.

7. Covenant House, headquartered in New York City, is the largest privately-funded childcare agency in the United States providing shelter and service to homeless and runaway youth

8. Defendant Bruce Henry was at all time stated herein employed as Executive Director of Covenant House. He is sued individually and in his official capacity.

9. Defendant Robert Giugliano was at all time stated herein employed as the Director of Mental Health of Covenant House. He is sued individually and in his official capacity.

## IV. STATEMENT OF FACTS

10. Plaintiff is a Black male psychiatrist who was employed at Covenant House, located at 460 W. 41st Street, New York, NY 10017, from March, 1999, until his abrupt and wrongful termination on November 24, 2003.

11. Covenant House employs approximately 30 people at that site.

12. Plaintiff held various titles related to the number of hours he worked, but was most recently employed as a psychiatrist, working half-time, from October 7, 2002 to November 24, 2003.

13. At all times stated herein, Plaintiff was a competent, loyal and dedicated employee. At all times relevant to this lawsuit, Plaintiff met the employer's legitimate job expectations and exceeded the job requirements. Plaintiff's performance evaluations were always satisfactory and he never received any criticism related to performance.

14. On November 17, 2003, plaintiff's free parking space at Covenant House Parking Lot was taken away, on information and belief, due to his race and gender.

15. Plaintiff complained about this situation to his supervisor on November 17, 2003 and to the Director of Public Safety on November 18, 2003.

16. In Plaintiff's discussion with the Director of Public Safety, he told her that "I am a Black Man in America. I expect to be disrespected."

17. On information and belief, immediately following the statement made by plaintiff re "being disrespected," the Director of Public Safety called defendant Bruce Henry to report the conversation and to seek guidance on what steps to take.

18. On information and belief, defendant Bruce Henry, the Executive Director of Covenant House, contacted defendant Dr. Robert Giugliano to take the necessary steps to terminate Dr. McIntosh's employment at Covenant House.

19. On November 24, 2003, Plaintiff was summoned to the office of the Medical Director, Dr. Pauline Heslop, and told that she had been instructed by Director of Mental Health, Dr. Giugliano to give him (Plaintiff) a progressive disciplinary form terminating his employment.

20. The form stated that Plaintiff had approached the Director of Public Safety, Ms. Yolette Charles, in a "very insulting and unprofessional manner." It further stated that Plaintiff was "intimidating," and had "been warned in the past of similar behavior."

21. Plaintiff explained to the Dr. Heslop that the only conversation he had with Ms. Charles was a conversation in the parking lot complaining about his parking space of many years having been taken away on the basis of race and gender. He further explained that the conversation had been held in civil tones, without expletives, insults, threats or anything that could be remotely construed as unprofessional, intimidating or insulting. Plaintiff also denied that he had previously "been warned of similar behavior."

22. Plaintiff asked the Dr. Heslop for more specific information, which she refused or was unable to supply. She refused to tell Plaintiff who had made these allegations, nor did she answer his question regarding the legitimacy of an "investigation" for which he had not been interviewed, nor apprised of until he walked into her office and was given a termination form.

23. Dr. Heslop, in plaintiff's presence, called Dr. Giugliano and told him of her reluctance to give plaintiff the form as he denied the truth of its allegations. Dr. Heslop informed Plaintiff that Dr. Giugliano told her to give Plaintiff the form and have him bring his grievance later to the Human Resources unit.

24. Plaintiff was told to immediately surrender his keys and identification and was not allowed to get his copy of the "Employees' Manual" or his property from his office. Nor was he

permitted to say goodbye to his patients and to terminate his professional relationship with properly.

25. When Plaintiff attempted to grieve his unlawful termination, the Director of Human Resources, Judy Mills, told him that he could not have a copy of the employee handbook, nor bring a lawyer or witness to a grievance hearing, nor have access to his personal records.

26. Despite what he regarded as unlawful restrictions, Plaintiff agreed to attend a meeting, and, following Ms. Mills' instructions, made an appointment with Dr. Giugliano. 20 minutes later, Ms. Mills cancelled the meeting.

27. Plaintiff was never given a hearing where he could produce witnesses to vindicate himself. Furthermore, Covenant House never answered in writing Plaintiff's written requests for a grievance hearing, nor would they tell Plaintiff under which section of the by-laws he had been discharged. Dr. Giugliano never provided any written charges except the progressive disciplinary form Plaintiff was given at the time of his wrongful termination.

28. On information and belief, following Plaintiff's termination, Dr. Giugliano, contrary to Covenant House/Under 21 policy, told a prospective employer that Plaintiff had been fired, causing further damage to Plaintiff's reputation, employability and employment status.

29. During his tenure at Covenant House, Plaintiff faced various instances of discrimination based on race, gender and national origin, which he often chose to circumvent rather than confront directly.

30. At one point, Plaintiff's supervisor had approved his request to work longer hours. On information and belief, had the request been approved, Plaintiff would have had a higher salary than Dr. Giugliano. Rather than approve the request, Dr. Giugliano hired a white female for the

additional hours that the agency needed. On information and belief, Dr. Giugliano could not tolerate a Black male's salary being higher than his own.

31. After the white female hiree (supra) subsequently left Covenant House, Plaintiff was only able to get the additional hours which she had worked by taking a salary cut that kept his salary lower than Dr. Giugliano's.

32. Covenant House has a pattern, policy and practice of race and gender-based discrimination in hiring and employment. There is a stratification in which white males occupy the most favored status and Black males from the U.S. the least. During Dr. Giugliano's tenure as Director he has hired 8 deputy directors and one coordinator. Seven have been women, four of whom were white. During Plaintiff's tenure there, Dr. Giugliano hired one psychiatrist, a white woman. On information and belief, following Plaintiff's termination, Dr. Giugliano hired two white females to replace him, one psychiatrist and one nurse practitioner.

33. On information and belief, at the time of Plaintiff's termination, the Executive Committee of Covenant House had a dozen members none of whom were Black males.

34. Plaintiff has learned since his termination that, on information and belief, other US Born Blacks had been fired and denied due process when they attempted to grieve their dismissal.

35. On information and belief, Covenant House has a policy of wrongfully dismissing Black and Latino administrators.

36. Plaintiff brought his case before the Equal Employment Opportunity Commission. On August 31, 2005, Plaintiff's prior attorney received a Notice of Dismissal and Right to Sue letter dated August 26, 2005.

## V. CLAIMS FOR RELIEF

### First Claim for Relief Against Covenant House

37. Paragraphs 1-36 are incorporated by reference.

38  By engaging in acts of intentional violations of racial discrimination, retaliation and unlawful harassment in the workplace against Dr. McIntosh, by interfering with the right of Plaintiff to make and enforce contracts, by denying Plaintiff equal enjoyment of all benefits, privileges, terms and conditions of employment, the Defendant Covenant House has violated plaintiff's rights under the Civil Rights Act of 1991, 42 U.S.C. sec. 1981 and 42 U.S.C. sec, 2000-e.

### Second Claim for Relief Against Dr. Giugliano and Bruce Henry

39  Paragraphs 1-36 are incorporated by reference.

40. By engaging in acts of intentional violations of racial discrimination, retaliation and unlawful harassment in the workplace against Dr. McIntosh, by interfering with the right of Plaintiff to make and enforce contracts, by denying Plaintiff equal enjoyment of all benefits, privileges, terms and conditions of employment, the Defendants Henry and Giugliano have violated plaintiff's rights under the Civil Rights Act of 1991, 42 U.S.C. sec. 1981.

### VI. REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Assume jurisdiction over this matter.
2. Issue a declaratory judgment that:

    a. The defendants have discriminated against Dr. McIntosh on the basis of his race or color, gender and national origin by subjecting him to discriminatory terms and

conditions of employment, by treating white female and non-American born male employees more leniently than Dr. McIntosh in terms of employment conditions and discharge from employment for alleged offenses of comparable seriousness, by employing supervisory discretion in a discriminatory manner to terminate plaintiff's employment as a psychiatrist because of his race or color and national origin.

Defendant Covenant House' acts of intentional racial discrimination and unlawful harassment and retaliation in the workplace against Dr. McIntosh violated the Civil Rights Act of 1991, 42 U.S.C. Sec 1981 and 42 USC sec. 2000(e).

Defendant Henry's and Defendant Giugliano's acts of intentional racial discrimination and unlawful harassment and retaliation in the workplace against Dr. McIntosh violated the Civil Rights Act of 1991, 42 U.S.C. Sec 1981.

3. Enter preliminary and permanent injunctions requiring that defendants:

    a. Immediately hold a fair hearing which complies with procedural due process;

    b. Immediately reinstate Plaintiff to his position as a psychiatrist

    c. Pay to plaintiff forthwith monetary damages to compensate him for the loss of wages, social security , and fringe benefits , with interest from the dates when said sums were due until the judgment is paid;

    d. their officers, agents, successors, employees, attorneys and assigns and other representatives, and all those persons acting in concert with them and at their discretion, desist from engaging in any act of deprivation of civil rights or employment discrimination against Dr. McIntosh and other black U.S.-born males in a position similar to that of the Plaintiff.

4. Award Dr. McIntosh actual and compensatory damages in excess of $100,000 against each and every defendant, jointly and severally; and punitive damages in excess of $500,000 against each and every individual defendant, jointly and severally.

5. Award Dr. McIntosh reasonable attorneys fees and costs pursuant to 42 U.S.C. Sec. 1988

6. Award Dr. McIntosh such other and further relief as justice may require.

**JURY DEMAND**

Plaintiff, Dr. James C. McIntosh, hereby demands a trial by jury as to all issues.

JULY 17, 2007

PLAINTIFF

BY: _Roger S. Wareham_ (signature)
ROGER S. WAREHAM, Esq. (4751)
394 Putnam Avenue
Brooklyn, NY 11216
(718) 230-5270

I declare, under declara- ~~WHEREF~~ tion of perjury that the Amended Complaint served on Covenant House, Bruce Henry, Dr. Robert Giugliano on July 17th, 2007 at Administrative offices at 346 W. 17th Street. Service accepted by staff Attorney Nancy Downing. Service by mail to defendants Giugliano and Henry was made pursuant to NY CPLR § 308 on July 17th.

Roger S. Wareham

7/18/07